## QUILL CORPORATION

v.

## Clinton E. LeBLANC and Lorraine LeBlanc, d/b/a The Quill

Civ. No. 85–734–D.

United States District Court, D. New Hampshire.

Feb. 6, 1987.

---

Sulloway, Hollis & Soden by Michael M. Lonergan, Concord, N.H., Laff, Whitesel, Conte & Saret by Charles A. Laff, Larry L. Saret, Janet A. Pioli, Chicago, Ill., for plaintiff.

Upton, Sanders & Smith by Russell F. Hilliard, Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

This is an action for trademark infringement and false designation of origin brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051–1127, and for unfair competition, deceptive trade practices, and injury to business reputation brought pursuant to the common and statutory laws of New Hampshire. Plaintiff Quill Corporation seeks injunctive relief, treble damages, interest, costs, and attorneys' fees against defendants Clinton and Lorraine LeBlanc, d/b/a The Quill. Jurisdiction is based on 15 U.S.C. §§ 1114(1), 1121, and 1125(a); and 28 U.S.C. §§ 1331, 1338(a), and 1338(b). Currently before the Court are plaintiff's motion for summary judgment on all counts, Rule 56(c), Fed.R.Civ.P., and defendants' objection thereto.

### I. Factual Background

Plaintiff is the owner of record of six active United States trademark registrations for the mark "QUILL", or "QUILL" accompanied by the illustration of a rhomboid encasing a silhouetted quill. Since 1958 plaintiff has been in the business of selling and distributing general office supplies by mail solicitation, generating sales by sending catalogues and fliers on a periodic basis to existing and potential customers throughout the United States. Plaintiff's mark is featured throughout its sales literature, and photographs in the literature clearly show that many of plaintiff's wares are sold under plaintiff's private label, itself prominently displaying the QUILL mark.

Sometime prior to 1975, plaintiff began sending catalogues and fliers to potential customers in New Hampshire and Maine. Affidavits and exhibits establish that plaintiff mailed approximately 2000 fliers to potential customers in the two states in the ten-month period from May 1975 to February 1976. The extent to which this solicitation resulted in sales to *preexistent* accounts in the New Hampshire-Maine market, or whether such accounts even existed at the time of the mailing, is unknown. However, the existence of previously established accounts may be inferred from plaintiff's computer-generated report entitled "Analysis of New Accounts", which shows $1,700 in sales for that period to *new* accounts in the New Hampshire-Maine area.

The Court has seen no evidence that plaintiff registered or sought to register its mark with either New Hampshire or Maine at any time. Plaintiff federally registered its mark "QUILL" on April 1, 1980, and on July 1, 1980, it registered a variation of the mark, adding the previously-described rhomboid illustration. In 1983, 1984, and

1985, plaintiff registered four more variations of the QUILL mark.

In 1976, allegedly unaware of plaintiff's existence and of plaintiff's ongoing sales efforts under the QUILL mark in Maine and New Hampshire, defendants opened an office supply store in Conway, New Hampshire, selling essentially the same type of goods as those sold by plaintiff. Defendants named their store "The Quill" and registered "The Quill" as a tradename with the New Hampshire Secretary of State on July 21, 1976. At all times pertinent to this litigation, defendants have not sold private-label merchandise bearing their tradename or any other mark confusingly similar to plaintiff's. However, defendants employ and display their tradename in connection with numerous other facets of their business: on their store and delivery van, in their advertising, on sale fliers sent biannually to customers in New Hampshire and Maine, and, most importantly, on the front cover and spine of 1000 private-label catalogues printed and produced by United Stationers ("US") which defendants distribute annually to existing and potential customers. Distribution of the US catalogue appears to have had a significant and direct impact on defendants' sales: in 1981, the first year defendants distributed the catalogues, gross sales increased by nearly fifty percent.

Plaintiff's sales in New Hampshire between January 1, 1975, and March 30, 1980, were in excess of $170,000. Plaintiff's national and New Hampshire sales have continued to increase since 1980. In 1985 plaintiff's gross sales exceeded $800,000 in New Hampshire, were approximately $2 million in Maine, and on a national basis were more that $150 million. From 1976 to 1980 defendants' sales totalled approximately $140,000; in 1980 nearly $90,000; in 1981 nearly $134,000; and in 1985 more than $300,000.

On numerous occasions customers have confused the two dealers and have sought to order from defendants' store goods advertised in plaintiff's fliers and catalogues. In several of these instances, defendants have sold such customers the desired products rather than direct the customers to plaintiff.

The issue facing the Court is whether, as a matter of law, plaintiff's federally-registered trademark is infringed by defendants' use of a confusingly similar mark to sell similar (and, in some cases, the same) goods in a geographic area in which plaintiff also sells goods, where defendants adopted and began using their mark without knowledge of plaintiff's prior use and have continually used said mark from a date prior to plaintiff's registration.

## II. The Claim for Trademark Infringement

The Lanham Act was enacted by Congress in order "to provide uniform, comprehensive federal law to govern questions of trademarks used in and affecting interstate commerce." *Thrifty Rent-A-Car System v. Thrift Cars, Inc.*, 639 F.Supp. 750, 754 (D.Mass.1986) [hereinafter *Thrifty* ] (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193, 198, 105 S.Ct. 658, 661, 663, 83 L.Ed.2d 582 (1985)). The instant case involves trademarks used in interstate commerce; consequently, the provisions of the Lanham Act provide the controlling law as to the rights of the parties. *Id.* at 754–55; *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir.1969).

Federal registration of a mark under the Lanham Act is prima facie evidence that the registrant has exclusive rights to use the registered mark in commerce, subject to any common law legal and equitable defenses which would be otherwise assertible if the mark were unregistered. 15 U.S.C. § 1115(a); *Park 'N Fly, Inc., supra,* 469 U.S. at 194, 105 S.Ct. at 661. In addition, § 1065 of the Act provides that registered marks can become "incontestable", generally by filing an affidavit within one year of expiration of any five-year period following registration, during which period the mark has been in continuous use. Incontestable status is "conclusive evidence" of the registrant's exclusive rights to a

mark, as opposed to prima facie evidence. Once such status has been obtained, a junior user [1] of the mark is limited to a narrow range of seven defenses enumerated in the Act in order to justify encroachment upon the senior user's rights. 15 U.S.C. § 1115(b); *Park N'N Fly, Inc., supra*, 469 U.S. at 194–95 & n. 3, 105 S.Ct. at 661–62 & n. 3. Two of plaintiff's six registered marks have become incontestable within the meaning of the Lanham Act.

Given that plaintiff's mark is incontestable, defendants are limited to the defenses listed in § 1115(b). And, on the basis of evidence presented to the Court, only one of the enumerated defenses applies: § 1115(b)(5). That section provides:

If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods ... except when one of the following defenses or defects is established:

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party ... from a date prior to registration of the mark under this chapter ...: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved....

15 U.S.C. § 1115(b) (emphasis in original).

Defendants assert that § 1115(b)(5) provides a "complete defense" to plaintiff's claim of infringement, that "all elements of this defense have been met by the LeBlancs," and that "the only remaining issue is the extent of the geographic area to which this priority applies." Defendants' Memorandum at 4. Plaintiff asserts that because "[d]efendants concededly are not the prior user of the QUILL mark in New Hampshire or Maine[,] [t]his negates any

right of the defendants to assert Section 1115(b)(5)." Plaintiff's Reply Memorandum at 4. The Court agrees, in large part, with defendants.

■ Plaintiff's assertion is misplaced because it assumes that the key to determining applicability of a § 1115(b)(5) defense is determining who *first used* the mark in a given area. Plaintiffs' position is clearly incorrect based on the plain language of the section which looks instead to: (1) adoption of the mark without knowledge of prior use by a senior user, and (2) continuous use by the junior user from a date prior to registration of the mark by the senior user. Based on the following: defendant Clinton LeBlanc's deposition and affidavit; defendants' efforts in applying for and being granted use of the tradename "The Quill" by the New Hampshire Secretary of State; the lack of evidence that plaintiff registered or attempted to register its mark with the New Hampshire Secretary of State prior to defendants' entering the field; and the fact that defendants began doing business under the tradename "The Quill" in 1976 while plaintiff's first federal registration was not until 1980, the Court finds that defendants' adoption and use of their tradename "The Quill" was in good faith and without knowledge of prior use by plaintiff. With regard to the second element of the § 1115(b)(5) defense, it is undisputed that defendants have continuously operated their business since its inception. Accordingly, the Court finds that defendants have successfully established the elements of a § 1115(b)(5) defense.

■ However, this does not provide, as defendants argue, a "complete defense" to plaintiff's claim. Successful assertion of the § 1115(b)(5) defense merely affects the *evidentiary* status of the incontestability aspect of a federal registration, changing the import of the federal registration back

---

1. As terms of art used in the field of trademark law, "senior user" denotes "the first seller to adopt and use a mark in the United States," and "junior user" denotes "the second seller to adopt

the mark, even though the junior user may be the first in time within a given remote territory." J. McCarthy, *Trademarks and Unfair Competition* § 26:1 at 204 (1973).

to prima facie, rather than conclusive, evidence of a registrant's exclusive right to use the mark. *Park 'N Fly, Inc., supra,* 469 U.S. at 199 n. 6, 105 S.Ct. at 665 n. 6. The threshold elements of the defense being proven, the junior user, who has the burden of pleading and proof, then must establish the boundaries of the area in which it used the contested mark prior to registration in order to support its claim that it has the right to continue using the contested mark in *some* limited area. *Thrifty, supra,* 639 F.Supp. at 755; 15 U.S.C. § 1115(b)(5) (*"Provided, however,* that this defense shall apply only for the area in which such continuous prior use is proved.") (emphasis in original).

■ The common law rules regarding remote geographical use essentially hold that first appropriation of a mark does not in itself preclude use by a good-faith and innocent user in a remote geographical area:

> two parties who innocently adopt similar trademarks and use them in separate markets carve out territories for themselves. Within each territory, each party can use its mark free from interference by the other.
>
> The actual geographic area a party carves out is a question of fact, and a court delimits the area by examining the party's reputation, advertising, and sales with respect to the territory in question. In each instance, the test is whether the party's mark is sufficiently known there, or whether its sales there are of sufficient volume, to create a likelihood of confusion among consumers, should a second user enter the same territory.

*Thrifty, supra,* 639 F.Supp. at 753 (and citations therein). A good-faith junior user is entitled to injunctive relief against a senior user if the senior user attempts to enter the remote market in which the junior user has built up trademark rights; similarly, a junior user can be enjoined from entering markets in which the senior user has acquired exclusive rights. *Id.* As defendants have successfully asserted a § 1115(b)(5) defense, the Court turns to determining the limits of the geographic area in New Hampshire and Maine in which defendants have established a right to use the mark at issue.

■ Federal registration of the senior user's mark provides constructive notice to the world that the senior user has appropriated the mark, and has the immediate effect of foreclosing any junior user from expanding its market area. *Id.* at 755–56. At the point in time of registration, the junior user's current market—its "area [of] continuous prior use," 15 U.S.C. § 1115(b)(5)—is frozen, and "[a]s at common law, the junior user's reputation, advertising, and sales delimit its frozen area." *Thrifty, supra,* 639 F.Supp. at 756. In the instant case, plaintiff registered its mark on April 1, 1980; thus, that date governs the respective rights of the parties. In essence, what defendants had for a market area on April 1, 1980, they get to keep; after that date, expansion of their market area is legally precluded at least to the degree that expansion is based on use of the contested mark.

### III. Conclusions of Law

Under Rule 56(c), Fed.R.Civ.P., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute of fact is "material" if it "affects the outcome of the litigation," *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986) (quoting *Pignons S.A. de Mecanique v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir.1981)), and is "genuine" if there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *id.* (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). The burden is upon the moving party to affirmatively demonstrate that there is no genu-

ine, material factual issue, and the Court is required to view the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party. *Id.*

It is clear on the evidence presented to the Court that plaintiff is entitled to *some* sort of injunctive relief directed either to defendants' geographic market expansion following April 1, 1980 (the date of plaintiff's federal registration of the QUILL mark), or to defendants' continued use of the tradename "The Quill", or to a combination thereof. However, for the purpose of the motion sub judice, based on the evidence which has been presented by the parties the Court is unable to determine the relief to which each party is entitled.

 The evidence presented to the Court raises genuine questions of material fact with regard to the geographic scope of defendants' business activities as of April 1, 1980; that is, the geographic reach and nature of defendants' advertising (bearing in mind that advertising alone or sporadic sales are insufficient to establish the requisite "continuous prior use" of a trademark necessary to create trademark rights, *see Thrifty, supra,* 639 F.Supp. at 756; *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.,* 578 F.2d 727, 732 (8th Cir.1978); *Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 929 (8th Cir.1967)), and the geographic extent of defendants' customer base. Of particular concern to the Court are the 1000 US catalogues which defendants mail to potential customers, identified only as catalogues of "The Quill". Defendants increased their sales by nearly fifty percent the first year they distributed these catalogues, they have continued to distribute the US catalogues, and they have continued to enjoy dramatic sales increases. Taken together, these facts imply, but do not establish, that part of defendants' success stems from distributing the catalogues to a wider geographic area than that which was effectively reached by defendants prior to plaintiff's registration.

Because the evidence presented to the Court inadequately equips the Court to make any of the aforementioned determinations, genuine issues of material fact with respect to defendants' "area [of] continuous prior use" remain unresolved. Accordingly, summary judgment for the plaintiff is inappropriate and must be denied.

SO ORDERED.