**PLOUGH, INC., Plaintiff,**

*v.*

**JOHNSON & JOHNSON BABY PRODUCTS COMPANY, Defendant.**

Civ. A. No. 82–40.

United States District Court,
D. Delaware.

Feb. 12, 1982.

Joseph A. Rosenthal, Morris & Rosenthal, Wilmington, Del.; Donald H. Green, Vaughan Finn, Jeffrey H. Blattner, Wald, Harkrader & Ross, Washington, D. C., John R. Stewart, Richard E. Duerr, Jr., Memphis, Tenn., for plaintiff.

Thomas Herlihy, III, James F. Harker, Herlihy, Herlihy & Harker, Wilmington, Del., John W. Nields, Barbara C. Biddle, Howrey & Simon, Washington, D. C., for defendant.

## MEMORANDUM OPINION

STAPLETON, District Judge:

The snow still lies thickly over much of the nation, and the groundhog has predicted another six cold weeks of winter. For most of us, thoughts of short sleeves, bathing suits, and sunlit beaches seem very remote. But for the parties in this case, producers of "suncare products", such thoughts are very real, and very pressing. Plough, Inc. ("Plough") and Johnson & Johnson Baby Products, Inc. ("J & J") have each asked this Court to enter preliminary injunctions against its competitor's trade advertising during what both firms agree is the crucial season for the sale of their products to wholesalers and chain retailers.

Plaintiff filed this action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), on January 27, 1982. Plough alleged that J & J's advertising violated both federal and Delaware * law by claiming that its Sundown line was the "Number One Selling Sunscreen AGAIN!" (Complaint, Docket Item ["D.I."] 1, ¶ 18). On February 3, 1982, J & J filed its Answer and Counterclaim, and its own application for a preliminary injunction against Plough's advertising claims that its products give "a fast, dark tan" (Answer and

---

* Plough asserts its State law claims of false representation under the Court's pendent jurisdiction. *See* D.I. 1, ¶¶ 23–30. *SK & F Co. v.* *Premo Pharmaceutical Lab.,* 625 F.2d 1055, 1063 (3d Cir. 1980).

Counterclaim, D.I. 11, ¶ 9) and that its "Shade Family [of sunscreens] is the best selling protection for your sun sensitive customers." D.I. 11, ¶ 12. Since Plough has not had sufficient notice of J & J's counterclaim, the Court will not rule on J & J's application for interlocutory relief in this Memorandum Opinion. Whether Plough's own hands are entirely clean, however, is a factor I may consider in deciding whether to grant it an equitable remedy. *See, Haagen-Dasz, Inc. v. Frusen Gladje Ltd.,* 493 F.Supp. 73, 76 (S.D.N.Y.1980).

## I. LOTIONS, SCREENS AND BLOCKS: THE SUNCARE PRODUCTS MARKET

Plough is the leading producer in the suncare products market. Its product line is marketed under the tradename "Coppertone". It includes "Coppertone suntan lotions", "Shade sunscreens", "For Faces Only"—used as its name implies—creams, "Noskote" and "Lipkote" "sunscreens" for especially sensitive areas, and "Tropical Blend" lotions touted as producing a richer tan. J & J is a recent entrant into the suncare products field. It markets four "Sundown sunscreens", which provide varying degrees of protection against the sun's ultra-violet rays.

"Suncare products" are rated according to their Sun Protection Factor ("SPF"), which is the multiple of protection against sunburn provided compared to the body's own sunscreening ability. According to a proposed monograph prepared for the FDA, (see Affidavit of J. Richard Briscoe, D.I. 3A, Ex. A) 43 Fed.Reg. 38206 (August 25, 1978), "minimal" sunscreens are those which have an SPF of 2 to 4. Those with an SPF of 4 to 6 are "moderate"; 6 to 8 indicates "medium" protection; SPF 8 and above is "maximal"; and 15 and above is "ultra" protection. 43 Fed.Reg. 38215. All lotions, even those advertised as promoting tanning, contain chemical ingredients which operate as sunscreens. Taken together, there is no doubt that Plough's merchandise

with an SPF of 2 or higher vastly outsells the competition, including J & J.

J & J, asserting that exposure to the sun is harmful, and that tanning is undesirable,** markets only lotions with an SPF of 4 or greater. The present Sundown line includes lotions with SPF ratings of 4, 6, 8 and 15. Within this same SPF range Plough sells Coppertone "Suntan Lotion" (Moderate Protection) (SPF 4), "Shade Sunscreen lotions" (SPF 6, 8, and 15), Tropical Blend Sunscreen (SPF 4), For Faces Only (SPF 4, 6, and 15) and Noskote (SPF 8). Both parties rely on the same sales data reported by the A.C. Neilsen Company. The Neilsen reports show that Plough sells more products with SPF values of 4–15 than does J & J.

J & J counters with the argument that the "sunscreen" segment of the market is defined by customer perceptions, as shaped by advertising campaigns, as well as the attributes of the product itself. J & J points to overwhelming evidence that Plough regards its Shade sunscreen lotions as appealing to a market other than the one to which Plough targets its "Flash'em a Coppertone tan" publicity. For that reason, J & J maintains, Coppertone Suntan Lotion with an SPF of 4 is not part of the "sunscreen" segment, but is purchased by those interested in suntanning. Likewise J & J excludes Tropical Blend, Noskote and For Faces Only because they each appeal to specialized segments of the market.

The advertising in question here is trade advertising, not a direct appeal to consumers. Both J & J and Plough sell their products to wholesalers and to retail drug, food and general merchandise chains. Although they make most of their sales during the first quarter of the year—January to March—most consumer sales take place during the summer months. In order to persuade retailers to carry large inventories of their products, both Plough and J & J allow stores to wait until the end of the summer to pay for what they purchase and

** In earlier years, the Sundown literature made some reference to "permitting tanning". For present purposes, this year's materials are the only relevant ones, and they make no reference to tanning and heavily emphasize the health hazards of sun exposure.

to return merchandise remaining unsold at that time.

Plough asserts that the Sundown ads are literally false, whether "sunscreen" is defined to include all products having the effect of protecting the skin from some ultra violet radiation, or only those within the SPF range of the Sundown product line itself.

## II. SUCCESS ON THE MERITS.

To be entitled to a preliminary injunction, Plough must first show that it is likely to succeed on the merits of its claims. *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 356–7 (3d Cir. 1980); *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976). It has failed to do so.

█ Plough insists that, because it claims literal falsity, the relevant evidence consists solely of J & J's ads and the undisputed Neilsen data regarding the sales of suncare products. Even when a Lanham Act plaintiff claims literal falsity, however, the Court must first determine what message is conveyed by the accused advertising before it can decide whether that message is literally false.[1] Context can often be important in discerning the message conveyed and this is particularly true where, as here, the target of the advertising is not the consuming public but a more well informed and sophisticated audience of merchants. When the context of the challenged advertising thus far developed in this record is considered, Plough has not shown that the message conveyed is literally false.[2]

█ The message conveyed by the claim that J & J's Sundown line is the "number one selling sunscreen" depends, of course, on what the trade regards as a "sunscreen". While the proposed FDA regulations use the term in referring to any suncare product having a SPF from 2 on up, the current record strongly suggests that a merchant reading J & J's advertising would not understand it to be referring to all suncare products which contain a sunscreening ingredient. Both sides recognize the existence of separate "tanning" and "screening" markets. Plough's own trade promotional materials differentiate "Regular Suntan Products" (Coppertone Lite Formula Dark Tanning Oil, Coppertone Dark Tanning Oil, Coppertone Tropical Dark Tanning Oil, Coppertone Dark Tanning Lotion, Coppertone Suntan Lotion) from its "For Faces Only" product line, its "Tropical" category, and its "Shade Family of Sunscreen/Sunblocking Products" (Briscoe Dep. X1, at 298–99; *see also* 302, 313–15, 316). Unlike the customers to whom Plough directs its "Flash 'em a Coppertone Tan" campaign, the Shade Family is pitched to "sun sensitive customers". (Briscoe Dep. X1, at 347). Plough tells its trade customers that the Shade Family products are "the best selling sun protection products for your sun sensitive customers." Indeed, it seems clear that Plough selected "Shade" as the designation for its product line in this category for the specific purpose of differentiating the Shade products from those products, including Coppertone Suntan Lotion with SPF 4, which it promotes as tanning agents.

1. If the Court determines that the message is literally true, it must often go on to the distinct question whether, even though literally true, the message is misleading.

2. Although it has not stressed this argument, Plough also alleges that J & J's trade advertising claim that it offered suncare products "for every skin type" was false and misleading because the Sundown line does not include a sunscreen with an SPF of 2. The FDA Monograph recommends such a product for skin type V ("Rarely burns, tans profusely (dark brown) (insensitive)"), 43 Fed.Reg. 38213. The omission of skin types V and VI ("Never burns; deeply pigmented (insensitive)" no sunscreen indicated) from J & J's product line is consist-

ent with Sundown's marketing focus on customers fearful of skin damage.

Although Plough correctly points out that the FDA Monograph does not recommend an SPF 4 lotion for skin types V and VI, there is no reason to believe that such products are contraindicated. Furthermore, Plough itself regards its SPF 4 Coppertone Suntan lotion as suitable for skin type V. (Briscoe Dep. 61).

I do not regard Plough as likely to prevail on this Lanham Act claim because in the context of the sunscreen market segment, it is probable that the merchants reading the J & J advertisements would not think "every skin type" would include skin types V and VI, which require only minimal protection, if any at all, from the sun.

The Shade marketing plan of Plough describes the "sunscreen/block" market segment, in which the major competitive brands are identified as Shade, Sundown, Eclipse and Presun. (Briscoe Dep. X11; *see also* X13). Likewise, the J & J Flip Chart which its salespersons use to promote Sundown to its key customers (about 85% of all trade customers) discusses the sunscreen market segment and its four leading brands. (Sciarrone Aff. XC). Sunscreens are said to be a new, fast-growing product category sold to people who are concerned about the damaging effects of sunlight on the skin, and are not interested in tanning. The Chart then reveals that Sundown holds a higher share of this product market than Shade, Eclipse or Presun.

This evidence suggests that merchants to whom the parties address themselves are more likely to interpret "sunscreen" as referring to product lines with names and marketing strategies targeted to consumers looking for protection against the health hazards of sun exposure rather than a tan.[3] Moreover, while it is true that Plough refers to some products other than Shade as being "sunscreens", the evidence also suggests that these merchants may understand J & J's claim to be limited to those "protection" products with which the Sundown line is considered to be in competition. As I have noted, the internal marketing documents of both Plough and J & J identify a market in which the principal competitors are J & J's Sundown, Plough's Shade, Eclipse and Presun and it well may be that the purchasing merchants share the same perception with respect to Sundown's competition. Indeed, it is unlikely that J & J's promotional literature would refer to the market shares of Shade, Eclipse and Presun if they were not considered by the wholesalers and chain retailers to be Sundown's competition.

In short, I cannot conclude on this record that "sunscreen" is a term of art and that J & J's claim of leadership for Sundown is literally false. If, as J & J contends, merchants understand that the Sundown line is the leading seller in a market in which the Shade line is Plough's only entry, the literal meaning of the ad would be true since the Sundown line concededly outsold the Shade line last year. Under these circumstances, Plough has failed to prove a likelihood that it will succeed on the merits.

### III. IRREPARABLE INJURY.

Having concluded that the merchants to whom J & J's trade advertising is directed are likely to read and understand that advertising in a way that is consistent with the sales data accepted by both sides, I do not anticipate that Plough will experience any legally cognizable injury. Even assuming I am wrong in reaching that conclusion, however, I would still be unpersuaded by this record that Plough is in danger of suffering irreparable injury.

The context in which Plough's claim of irreparable injury arises is somewhat unusual. First, the liberal industry return policy encourages merchants to overstock suncare products. It is therefore the number of units which the merchants actually pay for in September, not the number placed in stores in March, which is the index of Plough's marketing success or failure. So long as "buy ins" during March do not result in situations where the merchants have insufficient supply to meet the summer consumer's demand, it is difficult to see how J & J advertising to the trade will adversely effect Plough's sales. At present there is no record basis for concluding that such shortages will occur or any explanation of how J & J trade advertising may otherwise adversely effect Plough. All that the record contains is the conclusory statement of Plough's merchandising vice president that claims of brand supremacy effect market decisions.

Second, this is not a case in which purchasers encounter a single claim to brand supremacy. Shade and Sundown have

---

**3.** Contrary to Plough's contention, the fact that there may be some "overlap" in the markets or some competition between suntan lotions and products which emphasize protection, while relevant to the issue of the message conveyed, is certainly not determinative thereof.

made conflicting claims to be the leading sunscreen. Both claims are readily verified, or explained, by reference to the same underlying Neilsen data. Both are communicated to the same relatively well informed and sophisticated audience. As the Wacker affidavits suggest, those merchants to whom brand supremacy is a material consideration can be expected to seek clarification. Moreover, the record discloses that Plough has available to it ways of mitigating any potential injury. It has already undertaken a campaign to educate the trade about the Neilsen data. To be sure this effort thus far has involved an expenditure of $20,000, but such expenses can be adequately compensated through monetary damages, if Plough establishes liability.

In the circumstances disclosed by the current record, it strikes me that the more prudent course is to leave the parties free to explain their claims and those of their competition, rather than to run the risk of wrongfully barring one side or the other from making a claim which may well turn out to be legitimate. Plough's application for a preliminary injunction will be denied.