HÄAGEN–DAZS, INC., Plaintiff,

v.

FRUSEN GLÄDJÉ LTD., A. B. Calip Dairies, Inc., Seligco Food Corp., Dolly Madison Industries, Inc., Pickwick Sales Corporation, T & W Suffolk Inc., Nelson Ice Cream Company, Inc., Richard Smith, Stephen Smith and Edward Lipitz, Defendants.

No. 80 Civ. 1930 (KTD).

United States District Court,
S. D. New York.

June 9, 1980.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Milton J. Schubin, William M. Borchard, Alan L. Mittman, New York City, of counsel.

James H. Callahan, Kenyon & Kenyon, New York City, for defendants; Robert D. Fier, William T. Boland, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Successful commercial marketing has many rewards. Most important to the marketer are the financial rewards to be reaped. However, when a manufacturer develops a novel marketing approach—a commercial concept meeting with a receptive consumer—the concept is often imitated. This is precisely what occurred in the case at bar.

Plaintiff, Häagen-Dazs, Inc., is the producer of Häagen-Dazs ice cream. Häagen-Dazs has come to be known as a premium ice cream product. The defendants are the producers and distributors of Frusen Glädjé ice cream which, although a recent entrant into the ice cream market, is advertised as a premium ice cream product.

Plaintiff commenced the instant suit charging defendants with unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and New York State Law. In addition, plaintiff charges that defendants are attempting to palm their product off as that of the plaintiff.

The essence of plaintiff's claim is that defendants have packaged their product in such a way as to "cash in on the commercial magnetism of the exclusive marketing technique developed . . . by the family which owns and operates Häagen-Dazs." Plaintiff's Memorandum at 2. In particular, plaintiff focuses upon five features on defendants' ice cream container which it charges were taken directly from its ice cream container in an effort to appeal to Häagen-Dazs customers and confuse them into believing that defendants' product is related to the Häagen-Dazs line. These features are: (i) the phraseology used in reciting the ingredients of the product in issue; (ii) a recitation of the artificial ingredients not contained in the product; (iii) the manner in which the product is to be eaten in order to enhance its flavor; (iv) a two-word germanic-sounding name having an umlaut (¨) over the letter "a"; and, (v) a map of Scandinavia.

Plaintiff concludes that defendants have intentionally packaged their product in a manner calculated to trade upon "plaintiff's unique Scandinavian marketing theme." Transcript at 4–5.

Plaintiff has now moved for a preliminary injunction to prevent defendants' continued use of the allegedly infringing container. A hearing was held before me on May 19, 1980. Based upon the testimony elicited and the evidence received at the hearing, as well as the various memoranda submitted by the parties, the following shall constitute my findings of fact and conclusion of law.

■ A preliminary injunction will issue only upon a clear showing by the movant that it will suffer irreparable harm absent its issuance and demonstrates either (i) a probability of success on the merits, or (ii) a sufficiently serious question going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant. *D. C. Comics, Inc. v. Powers*, 465 F.Supp. 843, 846 (S.D.N.Y.1978).

Applying these standards to the case at bar, it is apparent that plaintiff has fallen woefully short of entitlement to equitable relief.

Putting aside for the moment the question of irreparable harm, it is evident that there is a serious question as to the merits of plaintiff's claims. The only trademark

plaintiff possesses is for the name "Häagen-Dazs." There is no trademark, nor could there be, upon the so-called "unique Scandinavian marketing theme" employed by plaintiff. This is simply a vehicle by which plaintiff has chosen to market its product.

There is no question that the names in issue, Häagen-Dazs and Frusen Glädjé, are clearly distinguishable. It is true that both names contain two words to identify an ice cream product, but so do the names "Louis Sherry" and "Dolly Madison." Plaintiff cannot hope to base its claim of infringement upon such a fortuitous similarity. It is also true that the names in issue seem to be of Swedish origin and, as is appropriate in that language, an umlaut (¨) appears over the letter "a". This, however, is a matter of grammar and not a basis upon which a claim of infringement may hinge.

It is equally apparent that the containers in issue, as well as their dress, are clearly distinguishable and would appear so to all but the most obtuse consumer. Indeed, the coloring and designs on the containers, as well as the shape of the containers themselves, are so different that only the most unobservant and careless consumer would mistake one product for the other.[1] To be sure, even the suggested retail prices of the products in issue are significantly different so as to dispel even the possibility of confusion.

This suit is grounded in plaintiff's failure to appreciate the difference between an attempt to trade off the good will of another and the legitimate imitation of an admittedly effective marketing technique. In fact, plaintiff attempts by this law suit to significantly broaden its protected "trademark" to include its so-called "unique Scandinavian marketing theme." To do so, however, would work a grave injustice not only upon the defendants in this case, but also upon late entrants into a given product market. For example, when consumers became increasingly aware of the ingredients in food products, producers rushed to extoll the virtues of their "all natural" products. It would be ludicrous, however, to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of the "all natural" marketing approach to enhance consumer reception of its product.

▇ Likewise, in the case at bar, it would be unreasonable to suggest that since plaintiff was the first to market a premium ice cream product by employing a "Scandinavian flair", it be permitted to use such a marketing technique in the relevant product market to the exclusion of all others.

▇ In sum, I find that plaintiff has utterly failed to demonstrate even the remote possibility of confusion at the consumer level as to the source of defendants' product. And, since the likelihood of such confusion is the very essence of an infringement action, *see, Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204–05 (2d Cir. 1979), its absence certainly requires the denial of the extraordinary relief requested herein. Plaintiff has failed to demonstrate either a likelihood of success on the merits or even a sufficiently serious question going to the merits with respect to the charges of infringement and palming off.

▇ In addition, I note that given the unlikely possibility of confusion at the consumer level, there was no proof that irreparable harm would be suffered by plaintiff. For this reason as well, injunctive relief must be denied.

I turn finally to consider plaintiff's allegations that defendants' container is intended to deceive the public into believing that their product is made and/or sold in Sweden. In particular, plaintiff charges:

defendants claim their ice cream is manufactured 'under the authority' of a Swedish corporation, although Frusen Glädjé is produced in Pennsylvania by an American company and is not sold in Sweden at all; defendants fail to reveal the actual manufacturer, packer or distributor, all

---

1. There is no dispute, however, that both products at least purport to appeal to a narrow, albeit a sophisticated, segment of the consuming public—purchasers of premium ice cream products.

of which are American companies, which violates the applicable statutory labelling requirements; defendants also employ three lines of Swedish language on their container to add to the false impression that their product is sold or made in Sweden; and the English translation appearing beneath the Swedish language states that the recipe for Frusen Glädjé comes 'From Old Sweden,' whereas, in fact, the recipe is American.

Although defendants dispute the accuracy of these charges, even if true they simply do not advance plaintiff's case at all. On the contrary, since plaintiff itself has attempted to package its product in such a way as to give the impression that it is of Scandinavian origin, although it too is, in fact, of domestic origin, it is guilty of the same deceptive trade practices of which it accuses defendants. In short, since plaintiff's hands are similarly unclean, they may not secure equitable relief simply because defendants' hands may be a shade or two less clean.

Accordingly, plaintiff's motion for a preliminary injunction is denied.

So ordered.