Thomas M. MURPHY, d/b/a Thomas
M. Murphy & Assoc., Plaintiff,

v.

PROVIDENT MUTUAL LIFE INSURANCE CO. OF PHILADELPHIA, et al., Defendants.

Civ. No. B–88–231(WWE).

United States District Court,
D. Connecticut.

Feb. 7, 1990.

Michael P. Foley, Jr., of Blazzard, Grodd & Hasenauer, Westport, Conn., Stephen M. Trattner, of Lewis & Trattner, Washington, D.C., for plaintiff.

Allen D. Brufsky, of Kramer, Brufsky & Cifelli, Southport, Conn., Gregory P. La-Pointe, of Bachman & LaPointe, New Haven, Conn., Thomas P. Mullaney and George J. Duborg, Wethersfield, Conn., for defendants.

EGINTON, District Judge.

The well reasoned opinion of the Magistrate is hereby ADOPTED, RATIFIED and AFFIRMED. The clerk is directed to enter summary judgement against the plaintiff. The clerk is directed to close this case.

## MAGISTRATE'S OPINION

Plaintiff brought this action pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging an infringement of common-law service marks and unfair competition. Defendants Provident Mutual Insurance Company ("Provident Mutual") and AIMS, Inc. ("AIMS") have moved separately for summary judgment.

As an insurance plan administrator, plaintiff promotes and markets various insurance products to general agents and brokers, who in turn attempt to sell these products to consumers. In early 1986, plaintiff began to administer the Employees Dental Trust ("EDT"), a "stand-alone" dental health insurance plan underwritten by Connecticut General Insurance Company. Plaintiff initially promoted EDT with an advertisement stating that it was "the hottest dental plan in the insurance industry" and illustrated with a steaming coffee cup. See Addendum to Defendant AIMS' Memorandum, (Filing No. 90), Exhibit A1. In late 1986, plaintiff developed a follow-up advertisement for EDT, which described the product as "the hottest dental plan under the sun" and was illustrated with a large graphic of a bursting thermometer. See Complaint, Exhibit A. This advertisement first appeared in the January and February 1987 issues of "Life Association News," an insurance industry trade publication. Plaintiff did not register the thermometer symbol as a trademark, and the ad did not contain either a copyright or trademark notice. Plaintiff also alleges that in March and April 1987 EDT was promoted through direct mailings of fliers, presumably identical to the thermometer print advertisement, to general agents and insurance brokers.

Also in early 1987, defendant AIMS began to administer a "stand-alone" medical health plan called Plan USA, underwritten by defendant Provident Mutual. After seeing the EDT advertisement, AIMS developed an ad to promote Plan USA which included the words "Brand New and Red Hot" and was illustrated with a bursting thermometer. The Murphy and AIMS thermometers were identical. The Plan USA ad appeared in the April, May, June and July 1987 issues of "Broker's World," another insurance industry trade publication.

Prior to its appearance in the July 1987 issue, defendant AIMS was contacted by the advertising agency that created the EDT ad, M.L. Smith Marketing Services ("MLS"). At MLS's request, AIMS apparently indicated that it would discontinue its use of the thermometer artwork following the ad's appearance in the July issue. See Addendum to Defendant AIMS' Memorandum (Filing No. 90), Exhibit A30. AIMS then developed a new advertisement to promote Plan USA, featuring a flame graphic. AIMS did not publish the thermometer advertisement after July 1987, but plaintiff alleges that other materials, such as sales kits, which included the same thermometer graphic, continued to be distributed through August 1987 and remained "in use" until November 1987. See Plaintiff's Statement of Material Facts in Dispute (Filing No. 98), ¶ 112. Plaintiff's thermometer

ad reappeared in two July 1987 trade publications and the August issue of "Financial Times." Subsequently plaintiff chose to discontinue his own use of the thermometer graphic, allegedly because defendants' ads were confusingly similar.

At the threshold, defendants argue that the plaintiff lacks standing under § 43(a) to pursue a claim of trademark infringement since plaintiff is not the owner of the disputed graphic. The magistrate notes that the clear and unambiguous language of the contract between the plaintiff and MLS states that "all drawings ... or artwork prepared by or under the supervision of [MLS] are, and remain the sole property of [MLS] ..." Defendant Provident Mutual's Memorandum (Filing No. 65), Exh. F. It is also noted that while the MLS affidavit permits plaintiff to pursue this action by contradicting the above, MLS has not effected an assignment or other transfer of ownership, thereby potentially preserving its right to claim a proprietary interest in the graphic at some later date. In any event, the question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks. *Silverstar Enters. Inc. v. Aday*, 537 F.Supp. 236, 241 (S.D.N.Y.1982).

Because section 43(a) of the Lanham Act prohibits "false designation of [the] origin" of goods or services, *see* 15 U.S.C. § 1125(a), it protects against the appropriation of any mark or symbol, whether registered or unregistered, which is used to identify the source of a product and is intended to differentiate the product or service from others. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 212 (2d Cir.1985). There are three requirements for a word or symbol to be considered for this protection, and to qualify as a trademark: .

> (1)(a) tangible symbol ...; (2) ... actual adoption and use of the symbol as a mark by a manufacturer or seller of goods or services; (3) ... [the symbol] identif[ies] and distinguish[es] the seller's goods from goods made and sold by others.

1 J. McCarthy, *Trademarks and Unfair Competition*, § 3:1 (2d ed. 1984).

With these criteria in mind, it should be clear that to the extent plaintiff is claiming the right to the exclusive use of a "hot" theme or "hot" campaign, protection is not available under § 43(a). *See Haagen–Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F.Supp. 73, 75 (S.D.N.Y.1980). When an advertising theme is expressed in tangible words and/or symbols, then those words or symbols may be protectible. The cases cited by plaintiff as having extended protection to advertising campaigns in fact focused on specific, tangible elements of those campaigns. *See, e.g., Dreyfus Fund, Inc. v. Royal Bank*, 525 F.Supp. 1108 (S.D. N.Y.1981).

Since plaintiff cannot prevent defendants from adopting a similarly *themed* advertising campaign, he may be entitled to protect that component of the EDT ad which was allegedly copied, namely the thermometer graphic. It is apparent, however, that the graphic was neither used as a mark or functioned to identify and distinguish EDT from other plans, and therefore does not qualify as a potentially protectible trademark.

It is beyond dispute that the thermometer artwork was used and functioned as an "attention-getting device" rather than an identifying mark. *See* Plaintiff's Partial Opposition (Filing No. 97), at 38. Its presence in the ad was dictated by plaintiff's desire to *promote* EDT; the words "Employees Dental Trust" and the square EDT logo were meant to identify and distinguish the plan from other insurance products.

Because the thermometer artwork did not function as a trademark, plaintiff cannot pursue his claim under § 43(a). A different result would serve to contravene federal copyright law by permitting virtually unlimited protection of artwork and other graphic materials under the Lanham Act when such protection is not available under the copyright statute.

It is also questionable whether the graphic's use in advertisements would, assuming the other requirements were satisfied, be sufficient to impart trademark pro-

tection. Plaintiff refers to the thermometer illustration as both a servicemark and a trademark; his use of trademark in his legal memoranda is disingenious given his exclusive use of servicemark in the complaint. The distinction is critical to the question of whether plaintiff has used the alleged mark in a manner adequate to prevent a competitor from appropriating the mark. *See generally LaSociete Anonyme des Parfums LeGalion v. Jean Patou, Inc.*, 495 F.2d 1265 (2d Cir.1974). Advertising alone has been found to be insufficient to establish trademark rights. *See Quill Corp. v. LeBlanc*, 654 F.Supp. 380, 386 (D.N.H.1987).

■ Even if it assumed that the thermometer artwork qualified as a trademark, its eligibility for protection under § 43(a) would depend upon its classification as generic, descriptive, suggestive, or arbitrary. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). The facts of the present case can only support the conclusion that plaintiff's thermometer would be considered a descriptive mark. As noted above, the thermometer illustration promotes EDT by graphically representing its salability. "Marks which are merely 'laudatory' and descriptive of the alleged merit of a product are ... regarded as being descriptive." 1 J. McCarthy, *supra*, § 11:5(B).

■ As a descriptive mark, plaintiff's thermometer symbol would still not be entitled to the protection of § 43(a) unless it could be shown that it has acquired "secondary meaning." *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 213 n. 9 (2d Cir.1985); 1 J. McCarthy, *supra*, § 11:5(B). A mark acquires secondary meaning when " 'the *primary* significance of the symbol in the minds of the consuming public is not the product but the producer.' " *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1221 (2d Cir.1987). Given that plaintiff's marketing activities were not directed towards the general public but rather towards insurance agents and brokers, it would be sufficient to show only that "a substantial segment of [this] relevant group ... made the requisite associa-

tion between [the thermometer graphic] and the [plaintiff]." *Centaur*, 830 F.2d at 1222.

■ Several factors have been identified as useful in determining whether secondary meaning has accrued: (1) the amount spent in advertising the service or product; (2) the results of consumer studies; (3) unsolicited media coverage of the product; (4) its sales success; (5) attempts by competitors to plagiarize the symbol; and (6) the length and exclusivity of the plaintiff's use of the mark. *Centaur*, 830 F.2d at 1222; *Thompson Medical*, 753 F.2d at 217. No single factor is determinative, however, and every element need not be proved; "[e]ach case ... must therefore be resolved by reference to the relevant factual calculus." *Id.*

■ Despite ample opportunity to do so, the plaintiff has failed to come forward with sufficient evidence to support the conclusion that secondary meaning attached to the thermometer symbol. The only testimonial evidence plaintiff has offered are his own statements or statements from business associates expressing their *belief* that the requisite identification took place. These statements hardly go beyond the allegations contained in the complaint and do not constitute "affirmative evidence" from which a jury could reasonably find that secondary meaning was established. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). It is further conceded that no consumer studies were undertaken and that no unsolicited media coverage occurred. All of the other evidence offered by the plaintiff refers to the "hot campaigns" used to promote EDT; it is not specific, for example, as to the expenditures solely related to the thermometer advertisement. Also, contrary to his assertion, *see* Plaintiff's Partial Opposition (Filing No. 97), at 31 n. 1, plaintiff has not established that defendants plagiarized the EDT artwork. While it is apparent that AIMS *copied* the Murphy thermometer, plagiarism implies an intent to deceive or mislead that has simply not been demonstrated. Finally, although there is no fixed

rule regarding the length of time a symbol must be in use before it can acquire a secondary meaning, *see* 1 J. McCarthy *supra,* § 15:2, the plaintiff's use of the thermometer graphic for four months prior to the defendant's use, coupled with a lack of any other probative evidence, is insufficient to establish that the graphic became associated with the plaintiff prior to April 1987.

However, if secondary meaning is also assumed, then plaintiff can recover for trademark infringement under § 43(a) only if there exists a "likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Although an extensive list of factors relevant to this inquiry was set forth in *Polaroid Corp. v. Polarad Elects. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), and later cases have supplemented this list, *see, e.g., McGregor–Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1140 (2d Cir.1979), it has also been noted that "the complexities attendant to an accurate assessment of likelihood of confusion require that the entire panoply of elements constituting the relevant factual landscape be comprehensively examined." *Thompson Medical,* 753 F.2d at 214.

The "landscape" of the present case is hardly panoramic. Despite having deferred his response to the defendants' motions with respect to this issue for eleven months, the plaintiff has not come forward with *any* probative evidence that would tend to indicate that the AIMS ad was likely to cause confusion within the meaning of § 43(a).

The difficulty with plaintiff's evidence is apparent from his accompanying memoranda. Plaintiff argues that various depositions and affidavits establish that the AIMS ad caused confusion as to: (1) the source of Plan USA and (2) "reverse" confusion as to the source of the hot campaign and thermometer symbol. *See* Plaintiff's Opposition (Filing 138) at 3.

Under § 43(a), however, confusion is the misimpression that the senior user [plaintiff] is the source of the junior user's [defendant's] goods. Reverse confusion is the misimpression that the junior user is the source of the senior user's goods.

*Banff Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486, 490 (2d Cir.1988); *see also* 2 J. McCarthy, *supra,* § 23:1. Plaintiff's own statements, upon which he primarily relies, simply do not address the issue of confusion as to the source of Plan USA. Nor is confusion as to the ownership of the "hot thermometer campaign and the thermometer symbol" relevant to plaintiff's claim of trademark infringement. *See* Plaintiff's Memorandum, Exhibit D, ¶ 26 (Affidavit of Thomas M. Murphy); Exhibit H, ¶ 11 (Affidavit of Joel Whitten). There is hardly likelihood of confusion, in any event, where, as here, the names of the products and the plan administrators are clearly indicated. *See Bose Corp. v. Linear Design Labs, Inc.,* 467 F.2d 304, 310 (2d Cir.1972).

Because the record does not reflect "any significant probative evidence tending to support" plaintiff's allegations that defendant's advertisements were likely to cause confusion, *see First National Bank v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), assuming plaintiff could satisfy the other prerequisites, he would ultimately not be entitled to relief on the first count.[1]

Since defendants' motion should be granted with respect to the Lanham Act claim, it follows that it should also be

---

1. No evidence has been offered that suggests defendants attempted to "palm off" Plan USA as one of plaintiff's products. Nor has "reverse palming off" occurred, though the magistrate is admittedly mystified as to precisely what this would constitute. Plaintiff has also not sustained his burden of demonstrating the likelihood of injury and causation stemming from the defendants' advertisements. *See Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 190 (2d Cir.1980).

granted as to plaintiff's second count, alleging a violation of Connecticut's common-law of unfair competition. In their memoranda, the parties have treated this claim as having been brought under the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a et seq., ("CUTPA"), even though this statute is not referred to in the complaint. Whether viewed in the light of CUTPA, Connecticut's "anti-dilution" statute, Conn.Gen.Stat. § 35–11a et seq., or other common-law principles, plaintiff's failure to accrue a protected interest in the disputed artwork precludes recovery under this claim.[2]

Defendants have also moved to strike various portions of the affidavits and other materials submitted by the plaintiff in opposition to the pending Rule 56 motions. Resolution of those motions was previously deferred, see Endorsement (Filing 101) (Oct. 4, 1989), and they are now moot.

Defendants' motions for summary judgment should be granted.[3] The plaintiff may seek review of this decision by a United States district judge pursuant to statute and the Local Rules respecting United States magistrates. Failure to do so may preclude further review.

Dated at Hartford, Connecticut, this 26th day of January, 1990.

/s/ Thomas P. Smith
THOMAS P. SMITH
UNITED STATES MAGISTRATE

---

**2.** Although AIMS copied the Murphy artwork, "in the absence of legally-defined exclusive rights, imitation and copying is permitted and, in fact, encouraged as an essential element of competition." 1 J. McCarthy, *supra*, § 1:15; *see also American Safety Table Co. v. Schreiber*, 269 F.2d 255 (2d Cir.), *cert. denied*, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959).

**3.** Accordingly, the default judgment previously entered against defendant Massachusetts Associated Plans, Inc., *see* Filing No. 44 (November 1, 1988), should also be vacated. F.R.Civ.P. 60(b).