Jonathan V. KLECK d/b/a Vlad
Eyewear, Plaintiff,

v.

BAUSCH & LOMB, INC.; Bozell
Worldwide, a wholly owned subsidiary
of True North Communications, Inc.;
Lenscrafters, a wholly owned subsid-
iary of Luxottica Group, S.p.A., and
Sunglass Hut International, Inc., De-
fendants.

No. SA–99–CA–0416–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 29, 2000.

820

Richard E. Tinsman, Bernard W. Fischman, Tinsman & Houser, Inc., San Antonio, TX, Glenn Grossenbacher, Kenneth J. Burch, Law Office of Glenn Grossenbacher, San Antonio, TX, Gary M. Grossenbacher, Austin, TX, for Jonathan V. Kleck.

James L. Branton, Branton & Hall, P.C., San Antonio, TX, Ivan Kline, Joseph A. DiBenedetto, Winston & Strawn, New York City, for Bausch & Lomb, Inc., Lenscrafters, Sunglass Hut International, Inc.

R. Laurence Macon, Akin, Gump, Strauss, Hauer & Feld, San Antonio, TX, James L. Branton, Branton & Hall, P.C., San Antonio, TX, Ivan Kline, Joseph A. DiBenedetto, Winston & Strawn, New York City, for Bozell Worldwide.

## ORDER ACCEPTING IN PART AND REJECTING IN PART THE RECOMMENDATION OF THE MAGISTRATE JUDGE

ORLANDO L. GARCIA, District Judge.

On this date came on to be considered the Memorandum and Recommendation of United States Magistrate Judge Nancy Stein Nowak (docket no. 73), and the objections of plaintiff Jonathan V. Kleck (docket no. 74), and defendants Bausch & Lomb, Inc. ("B & L"), Bozell Worldwide, Lenscrafters, and Sunglass Hut International, Inc. (docket no. 76). When a party objects to a memorandum and recommendation, the Court is required to make a *de novo* determination of those portions of the report or proposed findings or recommendations to which objection is made. *Kreimerman v. Casa Veerkamp,* 22 F.3d 634, 646 (5th Cir.1994), *cert. denied,* 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 492 (1994); 28 U.S.C. § 636(b)(1)(C); FED. R.CIV.P. 72(b).

### Lanham Act claim.

 Kleck objects to the magistrate judge's recommendation that his trademark infringement claim under § 43(a) of the Lanham Act be dismissed. Clearly, as the magistrate judge correctly noted, trade dress law does not protect "an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d Cir.1995); *Parham v. Pepsico, Inc.,* 927 F.Supp. 177, 179 (E.D.N.C.1995), *aff'd,* 86 F.3d 1151 (4th Cir.), *cert. denied,* 519 U.S. 953, 117 S.Ct. 368, 136 L.Ed.2d 258 (1996). It is also clear, however, that trade dress protection can extend to specific advertising, sales, and marketing techniques. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992) (trade dress, defined as the "total image" of a product, may include sales techniques) (quoting

*John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980 (11th Cir.1983)); *Murphy v. Provident Mutual Life Insurance Co.,* 756 F.Supp. 83, 86 (D.Conn.) (when an advertising theme is expressed in specific and tangible words or symbols, those words or symbols may be protectable), *aff'd,* 923 F.2d 923 (2d Cir.1990), *cert. denied,* 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991); *Chuck Blore & Don Richman, Inc. v. ²⁰⁄₂₀ Advertising, Inc.,* 674 F.Supp. 671, 682 (D.Minn.1987) (summary judgment precluded because of possible claim for § 43(a) trade dress infringement for copying the style and format of a television commercial based on possibility of confusion concerning sponsorship of commercial); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.,* 503 F.Supp. 647, 649 (S.D.N.Y.1980) (product's image may be created by advertising materials or techniques that the purchasing public has come to associate with a single source), *aff'd* 644 F.2d 946 (2d Cir.1981).

Ideas and concepts that are too general will not be protected. *See, e.g., Prufrock, Ltd. v. Lasater,* 781 F.2d 129, 132 (8th Cir.1986) (concept of "informal country dining" cannot be validly claimed as trade dress); *Fashion Victim Ltd. v. Sunrise Turquoise,* 785 F.Supp. 1302, 1308 (N.D.Ill.1992) (protecting t-shirt designs of skeletons engaged in assorted sexual positions would place a monopoly on a fashion idea itself); *Haagen–Dazs, Inc. v. Frusen Gladje, Ltd.,* 493 F.Supp. 73, 75 (S.D.N.Y. 1980) (no protection for Haagen–Dazs's "unique Scandinavian marketing theme" used to promote its premium ice cream). On the other hand, concrete expressions of such ideas will be protected. *See, e.g., Hartford House Ltd. v. Hallmark Cards Inc.,* 846 F.2d 1268, 1274 (10th Cir.) ("Blue Mountain has not been granted exclusive rights in an artistic style or in some concept, idea, or theme of expression. Rath-

er, it is Blue Mountain's specific artistic expression, in combination with other features to produce an overall Blue Mountain look, that is being protected."), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Philip Morris Inc. v. Star Tobacco Corp.*, 879 F.Supp. 379, 383 (S.D.N.Y.1995) (trade dress in advertisements of plaintiff's Marlboro cigarettes, which juxtaposed the product with a setting of the American West through its "Marlboro Country" and "Marlboro Man" images, was inherently distinctive and thus protectable).[1]

The distinction between an unprotectable generalized concept or idea for a product and a protectable concrete expression of an idea may often, as in the present case, be a close one. *See Milstein*, 58 F.3d at 33; *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182 (5th Cir.1980) ("Trade-mark cases often involve line drawing in areas that are inherently 'fuzzy.' "), *cert. denied* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). *Milstein* suggests that a court faced with this task keep in mind the purpose of trade dress law:

> to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products. The line drawing task is . . . to distinguish an unprotectable idea from a protectable expression of the idea.

*Milstein*, 58 F.3d at 33.[2]

Two cases involving the "Cabbage Patch Kids" perhaps serve to illustrate the distinction between a mere marketing idea and a specific marketing or sales presentation with sufficient embodiment to be con-

---

**1.** Kleck relies extensively on *Philip Morris* in his objections. It should be noted that although the motion to dismiss was extensively briefed before the magistrate judge, Kleck did not cite *Philip Morris* in his arguments before the magistrate judge, and he offers no explanation for his failure to do so.

**2.** Admittedly, the distinction is often difficult to draw. This is borne out in a comparison of *Haagen–Dazs* with *Philip Morris*, two cases out of the same court. In the former case, the court viewed Haagen–Dazs's marketing as a general scheme, even though the marketing program had resulted in numerous specific manifestations. When comparing Haagen–Dazs's product with that of the defendant/competitor, the court described the similarities as "fortuitous," or matters of grammar (both used an umlaut over the letter "a"). 493 F.Supp. at 75. The court also found the two products' containers were clearly distinguishable "to all but the most obtuse consumer" thereby eliminating the possibility of confusion. *Id.* The court found it "unreasonable to suggest that since plaintiff was the first to market a premium ice cream product by employing a 'Scandinavian flair', it be permitted to use such a marketing technique in the relevant product market to the exclusion of all others." *Id.*

In *Philip Morris*, that company was the first cigarette maker to evoke the image of the American West for the purpose of selling cigarettes. 879 F.Supp. at 383. The court found Philip Morris's packaging and advertising of its Marlboro cigarettes since 1973 "has created an image of the American West made up of geographical ('Marlboro Country') and individualized (the cowboy as the 'Marlboro Man') components" which are entirely arbitrary, perhaps even fanciful, and thus inherently distinctive and protectable. *Id.* It is difficult to discern the distinction between the two cases. In both, the plaintiffs were the first to utilize their particular marketing theme, and both had promoted their products by use of the theme in packaging and advertising. While Haagen–Dazs could not prohibit other premium ice cream manufacturers from promoting their ice cream using a "Scandinavian flair," Philip Morris could prevent the defendant from marketing its cigarettes using a Western motif. Perhaps the only difference in the cases is that the *Haagen–Dazs* court made no determination whether Haagen–Dazs's advertising program was inherently distinctive, but spoke instead only of the possibility of confusion. Had the court explored the issue of distinctiveness, the result would have perhaps been different.

sidered protectable dress. In *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir.1982), a precursor of the Cabbage Patch Kids obtained trade dress protection against the defendant, a manufacturer of soft-sculptured dolls that, like plaintiff's dolls, came with adoption papers, a birth certificate, and the creator's name on each doll's buttock. The court found that these accouterments, although marketing techniques, were protectable trade dress. 684 F.2d at 831. In the second Cabbage Patch case, *Original Appalachian Artworks, Inc. v. Blue Box Factory*, 577 F.Supp. 625 (S.D.N.Y.1983), the court also accepted the view that these accouterments—adoption papers, birth certificates, promises of birthday cards, and the creator's signature on each left buttock—are trade dress. *Id.* at 631–32. Defendant also produced "soft-bodied" dolls, which it marketed as the "Flower Kids." But since the defendant's dolls had none of these features, the court denied plaintiff's request for § 43(a) protection. *Id.* The court also held that other trade dress the plaintiff sought to claim (a transparent plastic window on the boxes the dolls were sold in) was unprotectable as a "commonly used, functional device for displaying dolls." *Id.* at 631.

█ Kleck seeks protection for his trademarks and trade dress, which he alleges to include his tradename ("Vlad Eyewear"), trademarked logo (a "V" with fangs protruding from the letter),[3] fangs, bats, coffins, slogans (such as "Sunglasses even a Vampire can live with" and "Vampires stay in the shade"), and depictions of actors posing as vampires wearing Vlad Eyewear in advertisements and pro-

motions. Second Amended Original Complaint at ¶¶ 9, 20. He alleges that since 1996 he has been marketing his sunglasses using these themes and accouterments, has sold his eyewear to consumers, and has accepted an order for his eyewear in excess of $1,000,000 from a British merchant. It seems apparent that Kleck's marketing techniques and advertisements of actors posing as vampires, and his use of vampire symbols to convey the suggestion that his sunglasses protect vampires from the glare of sunlight, constitute trade dress. In other words, these elements have crossed the line from an unprotectable idea to a protectable expression of the idea.

Once this principle is accepted, it follows that whether Kleck's trade dress is inherently distinctive and whether there is a likelihood of confusion between Kleck's trade dress and Bausch & Lomb's similar advertising campaign are fact questions.[4] *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th Cir. 1983) (categorization as distinctive or nondistinctive is a factual issue); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir.1998) (likelihood of confusion is a question of fact). Therefore, dismissal of Kleck's claim under § 43(a) of the Lanham Act would be improper.

### State law claims.

**1. Unfair competition, breach of fiduciary duty, and civil conspiracy.**

Neither side objected to the magistrate judge's recommendations concerning Kleck's unfair competition, breach of fiduciary duty, and civil conspiracy claims. Finding the recommendations neither clearly erroneous nor contrary to law, I

---

**3.** Kleck does not allege infringement of his tradename or logo.

**4.** Because likelihood of confusion is a fact question that cannot be decided in this mo-

tion to dismiss, I did not review, and I offer no opinion on the consumer perception study attached to Kleck's objections.

will accept them, and these claims will be dismissed.

## 2. Breach of contract.

The magistrate judge converted defendants' motion to dismiss Kleck's breach of contract claim to a motion for summary judgment. The remainder of Kleck's state-law claims were analyzed under the standard of review pertaining to motions to dismiss.

■■■ Defendants point out that the confidentiality agreement contains no term providing that B & L will pay for Kleck's idea. Absent an express promise to pay, defendants argue, there must be a showing that the idea was novel to the buyer, otherwise the contract will fail for lack of consideration. In this regard, defendants cite what may be termed the "New York rule." *See Nadel v. Play–by–Play Toys & Novelties, Inc.*, 208 F.3d 368, 376–77 (2d Cir. 2000) (for contract-based claims in submission-of-idea cases, a showing of novelty to the buyer supplies sufficient consideration to support a contract). Kleck counters that the submission of his idea alone will provide adequate consideration for an implied contract. (Docket no. 71.) Kleck relies on 4 MELLVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 16.04[A] (2000) and the "California rule" as set out in *Chandler v. Roach*, 156 Cal.App.2d 435, 439, 441–44, 319 P.2d 776 (1957) (novelty is not a necessary element in implied-in-fact contract cases).

It is clear that Kleck cannot prevail on an express contract theory. An enforceable express contract will arise "if the person to whom an idea is submitted has expressly promised to pay for it in the event of its use." NIMMER § 16.04 at p. 16–17. The "Confidential Disclosure Agreement" contains no express promise to pay. Professor Nimmer's discussion of express contracts is based on agreements containing express promises of payment. "[I]f in return for plaintiff's disclosure defendant *promises to pay* if he uses the idea and plaintiff does in fact disclose the idea, then such disclosure should constitute a valid and binding consideration." *Id.* at p. 16–19 (emphasis added). If, however, the plaintiff completely discloses his idea in the absence of a promise by defendant to pay for its use, then no binding contract is created due to failure of consideration. *Id.* at p. 16–21.

*Desny v. Wilder*, 46 Cal.2d 715, 299 P.2d 257 (1956), relied on by both Professor Nimmer and Kleck, involved an express promise to pay for the use of an idea. *Id.* at 744, 299 P.2d at 273. That case also discussed the theory of implied-in-fact contracts, which may also be used to protect ideas. An implied-in-fact contract is one whose existence and terms are shown by conduct rather than by words. *Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enterprises*, 625 S.W.2d 295, 298 (Tex. 1981).

The *Desny* court was clear that the submission of an idea alone will not create an implied contract.

> The idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditioned disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure. *The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit;* this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue.

*Id.* at 739, 299 P.2d at 270 (emphasis added). Under certain specific circumstances, however, a contract to pay for the idea will be implied. *Id.* at 740, 299 P.2d at 271. For an idea to give rise to an implied contract, two circumstances must exist at the time the idea is disclosed: the "idea purveyor" must have "clearly conditioned his offer to convey the idea upon an obligation to pay for it if it is used by the offeree, and the offeree, knowing the condition before he knows the idea, voluntarily accepts its disclosure (necessarily on the specified basis) ...." *Id.* at 744, 299 P.2d at 270. Thus, as the *Desny* court reiterated, if such an implied promise to pay for an idea is to be found at all, it "must be based on circumstances which were known to the [recipient] at and preceding the time of disclosure of the idea to him and he must voluntarily accept the disclosure, knowing the conditions on which it is tendered." *Id.*

Klecks' summary judgment evidence shows that Kleck's agent approached Ray Scott, B & L's "New Products and Engineering Manager," with a proposal for B & L to manufacture coffin-shaped cases for Kleck's sunglasses. Scott prepared a prototype of the case that failed to satisfy Kleck. Kleck met with Scott in person on June 28, 1996. Before he disclosed any further information, he had Scott sign the Confidential Disclosure Agreement. Kleck then explained to Scott why he was dissatisfied with the prototype case Scott had prepared, discussed how B & L might manufacture cases to Kleck's satisfaction, and "pitched" Vlad Eyewear to Scott, telling Scott he was still looking for other potential licensors and financing. Kleck states, "I was hoping that Mr. Scott might become enthusiastic about Vlad Eyewear and could generate interest at B & L to license the brand, or get B & L to help finance production of the cases and additional sunglasses." Kleck declaration (docket no. 61 attachment) at ¶¶ 9–22; Second Amended Complaint ¶¶ 12–15. In all of Kleck's evidence and in his pleadings, there is never an allegation or insinuation that he was attempting to sell his sunglasses marketing ideas to B & L; rather his purposes were to have B & L manufacture items for his business, or to enter into some joint venture, licensing, or financing arrangements with Vlad Eyewear. Thus, he cannot show he conditioned his disclosure on an obligation to pay, that B & L knew of the condition prior to disclosure, and that B & L accepted the disclosure on that condition.

Kleck, however, never sought to sell his idea; he proposed instead a business relationship with B & L. A submission made for the purpose of interesting the recipient in participating in the enterprise as a partner or joint venturer will not give rise to an implied-in-fact contract because there is no evidence of an expectation of compensation for the service of revealing the idea. *See Faris v. Enberg,* 97 Cal.App.3d 309, 319, 158 Cal.Rptr. 704 (1979) (plaintiff submitted his format for a sports-themed television quiz show to defendant, not for the purpose of selling the format, but so defendant could decide whether he wanted to enter into a business relationship with plaintiff); *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 902–03 (9th Cir.1987) (contract not implied where plaintiff showed her designs to defendant, hoping defendant would hire her to acquire her designs; there was no discussion about defendant purchasing any particular design or about possible employment until after the designs had been displayed).

Despite the dearth of Texas case law involving the submission of ideas, I con-

clude, under *Erie*,[5] that Texas courts would apply the above rules and not imply a contract in the present case. As the Texas Supreme Court recently explained:

> In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain. But an agreement to make a future contract is enforceable only if it is specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations. It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000) (footnotes and quotation marks omitted); *see also Central Texas Micrographics v. Leal*, 908 S.W.2d 292, 297 (Tex.App.—San Antonio 1995, no writ) ("[T]he general rule is that no enforceable contract exists 'where the agreement of the parties leaves an essential term for later determination and it is never determined.'") (quoting *Mooney v. Ingram*, 547 S.W.2d 314, 317 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.)). B & L promised not to use or disclose Kleck's marketing ideas "until or unless a later written agreement between [Kleck] and [B & L] in [sic] entered into." No later agreement was made, and no terms of the later agreement were speci-

fied. This is at best an "agreement to agree," which Texas law will not enforce.

Thus, quite apart from any discussion about the applicability of the novelty requirement, Kleck cannot prevail under a theory of either express or implied contract because he has not raised a question of fact as to the existence of either type of contract.

### 3. Misappropriation.

■ Kleck objects to the magistrate judge's recommendation that his misappropriation claim should be dismissed. A claim for misappropriation of intellectual property may be stated under Texas law. *Capital Films Corp. v. Charles Fries Productions*, 628 F.2d 387, 394 (5th Cir.1980); *Official Airlines Schedule Information Service, Inc. v. Eastern Air Lines, Inc.*, 333 F.2d 672, 674 (5th Cir.1964). In *Capital Films Corp.*, the court listed the three elements of misappropriation as: (1) the idea is novel; (2) disclosure of the idea was made in confidence; and (3) the idea was adopted and made use of by the defendant. *Id.* at 394.[6] Kleck cannot satisfy the first element.

■ Because this cause of action is analyzed under the motion to dismiss standard, I have not considered the evidence presented on the breach of contract claim. Rather, I have restricted my review to the pleadings. Kleck has pleaded, however, that he disclosed his ideas pertaining to his vampire marketing theme to B & L employees (and the rest of the world as well), with no pre-disclosure agreement of confidentiality or agreement to pay for the idea, at the March 1996 Vision Expo. The Expo

---

5. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

6. Professor Nimmer lists the elements for a claim of idea misappropriation as: (1) the idea must be novel and concrete, and (2) there must be a legal relationship between the parties, whether by an express contract, a contract implied-in-fact, a quasi-contract, or a fiduciary relationship. NIMMER § 16.01 at 16–4.

took place over three months before the June, 1996 Confidential Disclosure Agreement was signed. Second Amended Complaint ¶¶ 10(d), 10(g) –(j), & 11. Therefore, as a matter of law, Kleck's idea was not novel to B & L at the time the confidentiality agreement was signed, and his misappropriation action must be dismissed.

**4. Breach of confidence (quasi-contract).**

■■■ An action for breach of confidence is a quasi-contract action. NIMMER § 16.03 at p. 16–11. A quasi contract is also known as an implied-in-law contract, as distinguished from implied-in-fact contracts, which were discussed above. *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 154 (Tex.App.—Texarkana 1988, writ denied). Quasi-contractual recovery is based on a benefit accepted or derived from which the law implies an obligation to pay. *City of Corpus Christi v. Heldenfels Bros., Inc.,* 802 S.W.2d 35, 40 (Tex.App.—Corpus Christi 1990), *aff'd,* 832 S.W.2d 39 (Tex. 1992); NIMMER § 16.03 at p. 16–10. A contract implied in law may be imposed to avoid unjust enrichment. *Riverside, Inc. v. Gulf States Utilities Co.,* 289 S.W.2d 945, 949 (Tex.Civ.App.—Beaumont 1956, writ ref'd n.r.e.). Likewise, quantum meruit is an equitable, quasi-contractual remedy that does not arise out of a contract, but is based on the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A.,* 787 S.W.2d 942, 944 (Tex.1990). Professor Nimmer states that if an idea is offered in confidence and the recipient later discloses the idea, the disclosure will give rise to a breach of confidence action. NIMMER § 16.06 at p. 16–48.

■■■ While Texas authority is nonexistent, the great weight of authority requires that an idea be novel before it will be protected under a breach of confidence or other quasi-contractual theory. *See Lehman v. Dow Jones & Co.,* 783 F.2d 285, 300 (2d Cir.1986) (Friendly, J.) (claim for breach of confidence fails because plaintiff's ideas were neither novel nor original); *Reeves v. Alyeska Pipeline Serv. Co.,* 926 P.2d 1130, 1143 (Alaska 1996) (protecting ideas under a property theory requires that the idea possess the property-like traits of novelty or originality); *Garrido v. Burger King Corp.,* 558 So.2d 79, 84 (Fla. App.1990) (same). Even California courts require novelty as a prerequisite for the maintenance of a quasi-contractual action. *See Tele–Count Eng'rs, Inc. v. Pacific Tel. & Tel. Co.,* 168 Cal.App.3d 455, 462, 214 Cal.Rptr. 276 (1985) (idea must be confidential and novel to warrant breach of confidence protection); *Fink v. Goodson–Todman Enterprises, Ltd.,* 9 Cal.App.3d 996, 1009, 88 Cal.Rptr. 679 (1970) ("The right of plaintiff's work to protection by reason of sufficient novelty and elaboration of the accessible idea is a prerequisite ... [to] the unjust enrichment-breach of confidence count."). Because Kleck's idea was not novel, his breach of confidence action must fail.

**5. Actual or constructive fraud.**

Kleck pleaded that he disclosed confidential information about his business ideas to B & L "for the sole and limited purpose of allowing B & L to evaluate those ideas for a proposed business venture." Second Amended Complaint at ¶ 37. He further alleged that a confidential relationship was established, that B & L assured Kleck it would not use his ideas without his consent, that B & L agreed to use the information solely to evaluate Kleck's proposal, and that B & L used Kleck's confidential ideas and information for its own benefit without Kleck's consent. *Id.* at ¶¶ 37–39.

■ Under Texas law the elements of fraud are (1) a material misrepresentation of a present existing fact, (2) that was false, (3) that was either known to be false when made or was asserted without knowledge of the truth, (4) that was intended to be acted upon, (5) that was relied upon, and (6) that caused injury. *Carnival Leisure Indus., Ltd. v. Aubin*, 53 F.3d 716, 718 (5th Cir.1995); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). A promise to do something in the future is actionable fraud "only when made with the intention, design and purpose of deceiving, and with no intention of performing the act" at the time the promise was made. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986); *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). The mere failure to perform a promise does not constitute evidence of the promisor's intent not to perform at the time the promise was made. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992); *Dickinson v. Auto Ctr. Mfg. Co.*, 594 F.2d 523, 527 (5th Cir.1979).

■ Further, FED.R.CIV.P. 9(b) requires that in a fraud case, the allegations of fraud must be pleaded with particularity—that is, the plaintiff must specifically state the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentations and what that person obtained thereby. *Williams v. WMX Technologies*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). "Although the defendant's state of mind may be averred generally, the party claiming fraud must allege the existence of facts and circumstances sufficient to warrant the pleaded conclu-

sion that fraud ha[s] occurred." *Haber Oil Co. v. Swinehart*, 12 F.3d 426, 439 (5th Cir.1994) (internal quotation marks omitted).

Kleck fails to allege that when Scott signed the confidentiality agreement, he did not intend to honor the promise that B & L would not use Kleck's ideas without his consent. Nor does Kleck allege any misrepresentations on the part of B & L. Rule 9(b) requires a plaintiff to allege the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud has occurred, or face dismissal of his claim. *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir.1994). Kleck has alleged nothing more than a breach of contract. His pleadings are insufficient to support a fraud action.

The Court has conducted an independent review of the entire record, a *de novo* review of the matters raised by the objections, and has reviewed the applicable law. Based on this review, the Court ACCEPTS in part and REJECTS in part the Memorandum and Recommendation. 28 U.S.C. § 636(b)(1) and Rule 72(b). Defendants' motion to dismiss (docket no. 44) is GRANTED IN PART and DENIED IN PART, and their motion for summary judgment (docket no. 44) is GRANTED. Defendants' motion to dismiss and motion for summary judgment are GRANTED as they pertain to plaintiff's state-law causes of action, and their motion to dismiss is DENIED as it pertains to plaintiff's claims pursuant to the Lanham Act. Plaintiff's claims for unfair competition, breach of fiduciary duty, civil conspiracy, misappropriation, breach of confidence, and fraud are DISMISSED, and summary judgment is GRANTED on plaintiff's breach of contract claim.